# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LARRY J. EVANS, | ) |
| Plaintiff, | ) |
| vs. | ) No. 07 C 2941 |
| THE CITY OF CHICAGO, | ) |
| Defendant. | ) |

## MEMORANDUM DECISION

In this § 1983 action, Larry J. Evans alleges that he is employed as a bricklayer by the City of Chicago Department of Water Management, that he applied for five promotions from June 1999 through April 2004, that he was not selected for any promotion even though his qualifications were superior to those who were selected, and that he was not selected in each instance because the City, acting through a conspiracy among its officials, made its decision based on political connections rather than qualifications of the applicant. He claims that his First Amendment rights to freedom of association and freedom of speech have been violated. He filed his law suit on May 24, 2007.

The City asserts the defense of the statute of limitations and moves to dismiss. Evans responds that his claim did not accrue until he knew or should have known that his constitutional rights had been violated, or when he knew or should have known that his injury stemmed from an unconstitutional municipal custom; or, if the claim did accrue more than two years before he filed his law suit, the running of statute of limitations was tolled because of the City's fraudulent concealment of facts that would have given Evans reason to believe he had a claim.

"[W]hen a motion to dismiss is based on a statute of limitations defense, it is irregular to dismiss a claim as untimely. That is because the statute of limitations is an affirmative defense, and a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations. That said, dismissal based on the statute of limitations is appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Zitzka* v. *Village of Westmont,* No. 07 C 0949, 2007 WL 3334336, at *2 (N.D. Ill. Nov. 6, 2007) (citing *Hollander* v. *Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006)) (internal quotation marks and citations omitted). As on a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), the court here accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *McMillan* v. *Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).

The parties agree on basic principles: Illinois' two year statute of limitations applies to § 1983 claims arising in Illinois. *Licari* v. *City of Chicago*, 298 F.3d 664, 667-68 (7th Cir. 2002) (citing *Wilson* v. *Giesen*, 956 F.2d 738, 741 (7th Cir. 1992)). A §1983 claim accrues when the plaintiff knows or should know that his or her constitutional rights have been violated. *Id.* at 668. The "first task in determining the accrual date of a section 1983 case is to identify the injury," and next, the court determines the date when the plaintiff could have sued for that injury. *Kelly* v. *City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). This date "should coincide with the date the plaintiff 'knows or should have known' that his rights were violated." *Id.*; *see also Cada* v. *Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("Accrual . . . is not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes

2

later—on which the plaintiff discovers that he has been injured."). This is the date the statute of limitations began to run.

Applied to Evan's complaint, the first determination is easy: Evans was injured each time he was passed over for promotion for lack of political clout. As for when Evans could have sued for his injury, the City argues that he could have sued immediately upon notice of his non-selection, citing *Kelly*, 4 F.3d 509 (§1983 due process claim based on police officers' allegedly false allegations of narcotics violations resulting in revocation of liquor license accrued on the date of revocation, not on the date the bar was actually closed after legal proceedings were completed); *Ferrante* v. *City of Chicago*, No. 06 C 5024, Dkt. No. 23 (N.D. Ill. Jan. 10, 2007) (time for filing complaint alleging contempt of "Shakman decree" began to run on date plaintiff became aware that an adverse decision was made); and *Thelen* v. *Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995)[1] (ADEA action accrued when the plaintiff discovered that he has been injured, not when he determined that the injury was unlawful).

In response, Evans makes two arguments under the "discovery rule" of accrual, which postpones accrual from the date the party is injured to the date when the party, exercising reasonable diligence, discovers or should have discovered the injury. *Cathedral of Joy Baptist Church* v. *Village of Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 1994) (citing *Cada*, 920 F.2d at 450). First, he argues that he could not have discovered his injury because he did not have access, at the time of his non-selection, to information about the employees that were selected

---

[1] *Thelen* was an age discrimination case in which the plaintiff alleged that the employer had told him that his duties had been taken over by a person only 6 years younger than he but he later learned that he had been replaced by a person 33 years younger. Plaintiff argued that his claim did not accrue until he learned the truth and had reason to suspect that his termination was wrongful. 64 F.3d at 267. The court rejected this argument, which is quite perfectly analogous to Evans's argument here, stating, "Thelen's injury was his termination"; "he 'discovered' his injury [when he learned] he was to be terminated." *Id.*

3

for the positions. At least, he contends, this cannot be decided on a motion to dismiss. Second, he argues that he could not have discovered his injury because he had no access to facts revealing the unconstitutional acts of the City's officials.

The first argument lacks support in case law, particularly after *Ledbetter* v. *Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162 (2007), which held that a Title VII plaintiff's claim based on recently received pay was time-barred even though the plaintiff at the time the discriminatory compensation was initiated lacked access to facts supporting a claim. Even before *Ledbetter*, the law was settled for employment discrimination cases involving hiring, promotion and terminations. *See Thelen*, 64 F.3d at 267; *Ledbetter*, 127 S. Ct. at 2181 (Ginsburg, J., dissenting) (arguing that a different rule should apply to discrimination in compensation, stating that a worker knows immediately if she is denied a promotion or transfer, fired, or refused employment, whereas compensation disparities are often hidden from sight). Evans' effort to distinguish *Thelen* and *Ledbetter* on the basis that they are employment discrimination cases entailing a fact-finding administrative procedure is unavailing in the face of *Delaware State College* v. *Ricks*, 449 U.S.250 (1980) (claims pursuant to both Title VII and § 1981 accrued on date plaintiff was denied tenure, not date he left his job), as well as *Kelly* and *Cathedral of Joy*, which are § 1983 cases that apply the same rule, as do *Ferrante* (contempt of consent decree), and *Teumer* v. *General Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994) (rejecting plaintiff's "meritless argument" that ERISA claim did not accrue until he first discovered the information from which he ascertained the alleged unlawful nature of the layoff).

Evans' second argument is also unpersuasive. Acknowledging the holding in *Kelly* that the § 1983 claim was time barred, Evans attempts to distinguish it on the facts. Evans relies on

4

the portion of the opinion (after finding the date of accrual as the date when the plaintiffs learned the liquor license was revoked) where the court also rejected the plaintiffs' argument that their claim did not accrue until they discovered the police officers' perjury once they were acquitted on state criminal charges. The court reasoned that if plaintiffs were not involved in narcotics, they knew the officers' allegations were false when they were uttered; thus, they had reason to know at the time of revocation that the defendants' conduct was unconstitutional. *Kelly*, 4 F.3d at 513. Evans argues that he, by contrast to the *Kelly* plaintiffs, "was not aware that fraudulent conduct was afoot" at or about the times he was not promoted; as such, his claim did not accrue until he was through reasonable diligence able to discover the Shakman violation supporting his claim.[2]

---

[2] The Complaint, ¶36, alleges,

> Because the Defendant's unconstitutional policy of political hiring was concealed and unknown to the Plaintiff, he could not discover through reasonable diligence that he incurred an injury at the time he was denied a job, promotion, or employment benefits and that the injury was a proximate result of the City's municipal policy. Plaintiff brings this claim within two years of the accrual of the claim, which is when he could discover through reasonable diligence that he incurred an injury as a proximate result of Defendant's acts.

Evans's memorandum in opposition to the motion attempts to demonstrate inability to discover facts, referring to a federal indictment in September 2005, indicating that "[t]he trial that ensued made public for the first time a City-wide custom and practice of political patronage hiring in non policy-making City positions violative of the Shakman Decree and the First Amendment." Memo. in Opp. to Def.'s Motion to Dismiss, at 2. Not conceding that it was front-page news more than eight months earlier, Evans cites the indictment of certain city officials in September 2005 that disclosed a scheme to exchange jobs for political campaign contributions and the ensuing trial that followed.

The subtext implying that Evans exercised reasonable diligence in making his "discovery" is as transparent as Evans' statements regarding the timing of the news reports are disingenuous. A search of Westlaw's "Illinois News" database demonstrates that the media were reporting corruption in the water department long before the trial. For example, on December 17, 2004, the *Chicago Sun Times* reported the grand jury's December 16, 2004, federal indictment of Donald S. Tomczak (Case No. 04 CR 921), first deputy water commissioner, noting that "Tomczak also led a patronage army of at least 100 water department employees, who were rewarded with raises, promotions and overtime for helping elect

(continued...)

The cited language in *Kelly* merely leaves open the possibility that if the plaintiffs at the time of the revocation believed they were involved in narcotics but later learned through the acquittal they were not (an implausible scenario to say the least), accrual might have been postponed until they learned the truth that they had been injured. The cases cited above demonstrate abundantly that a plaintiff in Evans' shoes would have discovered his injury each time he learned he was not selected for promotion, even though he did not learn the reason for his non-selection.

Evans' argument that his custom and practice allegations under the *Monell* doctrine[3] point to a different result is also unavailing. Evans relies on dictum in *Pinaud* v. *County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995), where the plaintiff claimed that a county, through a series of wrongful acts occurring over a period of years, maintained a custom and practice that denied him his civil rights. *Id.* The court stated that a *Monell* claim against a municipality "does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county 'policy or custom.'" *Id.* at 1157. It held, in any event, that the suit was untimely. *Id.* Because accrual looks at discovery of the injury not the cause of it, *Pinaud* does little to explain why a *Monell* claim should be viewed

---

[2](...continued)
politicians, the grand jury charged in the 46-page indictment." Tim Novak et al., *Water Dept. Called Bribery Haven*, CHI. SUN TIMES, Dec. 17, 2004, at 3. Similarly, the *Chicago Tribune*'s coverage of the same date reported, "Donald Tomczak, the department's former longtime No. 2 official, earmarked the campaign contributions for candidates he favored and used an army of more than 100 city workers to do political work in return for jobs, promotions and overtime, the indictment also charged." Matt O'Connor, *U.S. Indicts Chicago Water Department Officials in Racketeering Probe*, CHI. TRIB., Dec. 17, 2004, at 1.

[3]*Monell* v. *Dept. of Social Services*, 436 U.S. 658 (1978), established that local governments may be held liable under § 1983 for constitutional violations arising from policy, custom, or practice.

differently from any other civil rights claim. Indeed, a dissenting opinion took issue with the majority's dictum on the basis that it was inconsistent with Second Circuit precedent. *See id.* at 1162 (Jacobs, J., concurring in part and dissenting in part) ("The majority's statute-of-limitations view is not consonant with our most recent pronouncement on the issues addressed by *Monell* . . . . [A] § 1983 cause of action accrues when the plaintiff becomes aware that [s]he is suffering from a wrong for which damages may be recovered in a civil action.") (internal citations and quotation marks omitted). Inasmuch as there is no subsequent Second Circuit case relying on *Pinaud*'s dictum and nothing in Seventh Circuit case law supporting it, Evans' argument lacks persuasive force.

Evans must turn to his equitable tolling argument. Equitable tolling stops the statute of limitations from running once the accrual date has passed because the defendant takes active steps to prevent the plaintiff from suing in time. *Cada*, 920 F.2d at 450–51. This doctrine "presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant—above and beyond the wrongdoing upon which the plaintiff's claim is founded—to prevent the plaintiff from suing in time." *Id.* at 451.

Evans contends that because the City fraudulently concealed their acts from the plaintiff and the public by signing Shakman certifications stating that hiring was based on merit and not political considerations, it concealed the patronage scheme, causing tolling until he could have discovered the truth. This argument must fail because the fraudulent conduct of the defendant is part of the wrongdoing that constitutes the constitutional violation. *See id.* at 451 (the wrongdoing for tolling must be "above and beyond the wrongdoing upon which the plaintiff's

7

claim is founded"); *see also Thelen*, 64 F.3d at 268 ("It is the view of this court that [concealment of facts revealing the alleged discrimination as a basis for tolling] would eviscerate the concept of a limitations period because [i]t implies that a defendant is guilty of fraudulent concealment unless it tells the plaintiff, 'We're firing you because of your age.'") (internal quotation marks omitted).

Because the City has demonstrated that Evans filed his suit more than two years after his claim accrued, and because Evans has not proffered a plausible basis for equitable tolling, this appears to be the exceptional case where dismissal of the complaint, even though the dismissal is based on an affirmative defense, is justified.

**ORDER**

Defendant's motion to dismiss [#18] is granted.

ENTER:

Dated: November 29, 2007

_____
JOAN HUMPHREY LEFKOW
United States District Judge